FILED

2010 Nov-18  AM 09:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

RONNY E. PARRISH,              )
                                        )
         Plaintiff,           )
                                         )
     v.                        )     CIVIL ACTION NO. 09-G-2505-NE
                                         )
MICHAEL J. ASTRUE,         )
Commissioner of Social Security,   )
                                         )
         Defendant.     )
                                         )
                                       )

## MEMORANDUM OPINION

The plaintiff, Ronny E. Parrish, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Disability benefits.  Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

   (1)    whether the claimant is currently employed;

   (2)    whether he has a severe impairment;

   (3)    whether his impairment meets or equals one listed by the Secretary;

   (4)    whether the claimant can perform his past work; and

(5)     whether the claimant is capable of performing any work in the national
economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d
1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she
will automatically be found disabled if she suffers from a listed impairment.  If the
claimant does not have a listed impairment but cannot perform her past work, the burden
shifts to the Secretary to show that the claimant can perform some other job."  Pope at
477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner
further bears the burden of showing that such work exists in the national economy in
significant numbers.  Id.

In the instant case,  ALJ Patrick R. Digby determined the plaintiff met the
first two tests, but concluded that while he has an impairment or impairments considered
"severe," his impairments do not meet or equal in severity any impairment set forth at 20
C.F.R. Part 404, Subpart P, Appendix 1. [R. 14].   The ALJ found the plaintiff unable to
perform his past relevant work.  [R. 21].  Once it is determined that the plaintiff cannot
return to his prior work, "the burden shifts to the [Commissioner] to show other work the
claimant can do."  Foote, at 1559.  Furthermore, when, as is the case here, a claimant is
not able to perform the full range of work at a particular exertional level, the
Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).
Foote, at 1558-59.  The presence of a non-exertional impairment, pain, also prevents
exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must
seek expert vocational testimony."  Foote, at 1559.

3

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical

question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain

testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

ALJ Digby found that the plaintiff "has the following severe impairments: degenerative disc disease w/ history of lumbar fusion, history of left wrist surgeries, obesity, anxiety and depression. . . ."  [R. 14].  The plaintiff claims disability beginning November 16, 2006.  On January 22, 2003, the plaintiff underwent a lumbar fusion for L5-S1 spondylolisthesis[1] with foraminal stenosis related to an on-the-job injury he suffered on November 20, 1999. [R. 138, 140].  On March 18, 2003, the plaintiff saw his treating orthopedic surgeon, S. Craig Humphreys, M.D., for follow up.  Dr. Humphreys noted that the plaintiff rated his pain as a seven out of 10 while taking Lortab and Oxycontin for pain. [R. 179].  By August 18, 2003, the plaintiff complained of increasing pain he rated as an eight or nine out of 10. [R. 176].

A September 3, 2003, MRI showed "postsurgical changes compatible with a posterior spinal fusion at the L4-L5 and L5-S1 levels and anterior spinal fusion at the L5-S1 level." [R. 175].  The diagnosis was "status post lumbar fusion with recurrent small disc bulge at L5-S1 with bilateral nerve root foramen narrowing." [Id.].  By October 2, 2003, the plaintiff complained of increased pain "without any real resolution of his symptoms." [Id.].  The plaintiff continued to be treated for moderate to severe back pain

---

[1]  Spondylolisthesis is defined as "forward displacement of one vertebra over another."  Dorland's Illustrated Medical Dictionary 1567 (27th Edition).

7

with narcotic pain medications. [R. 169-174].  On April 14, 2005, physician's assistant Kurt Pulver noted that the plaintiff had an incomplete fusion, and discussed the possibility of a re-fusion, "but the patient is quite hesitant at the present time." [R. 169].

On May 8, 2006, the plaintiff told Dr. Humphreys that nothing eases his pain, despite taking Lortab 10 mg and Ultracet. [R. 162].  By August 14, 2006, the plaintiff rated his pain at a seven out of 10, and reported that walking or standing too long increased his pain, but that lying down eased the pain. [R. 160].  Again, Lortab 10 mg and Ultracet were not effective for pain control. [Id.].  However, by November 15, 2006, the plaintiff reported that he needed refills of Lortab and Ultracet, because rest and medication eased his pain. [R. 158].  On January 17, 2007, Dr. Humphreys noted that the "[r]ange of motion of the lumbar spine is limited." [R. 156].  The plaintiff complained of pain he rated at an eight out of 10, and while Ultram was effective for pain control, any movement of his back worsened the pain, while lying with his knees propped eased his pain. [Id.].  Dr. Humphreys noted that the plaintiff "is applying for disability and I will support him in this." [Id.](emphasis added)

On March 13, 2007, the plaintiff complained of lower back and bilateral lower extremity pain, rating his pain at a seven out of 10. [R. 154].  Dr. Humphreys noted that the plaintiff's "pain can be intensified by any activity and is eased with lying down and with use of a heating pad." [Id.].  Again, on June 19, 2007, the plaintiff rated his pain at an eight out of 10. [R. 152].  On September 18, 2007, the plaintiff complained of a pain level of nine out of 10, which was intensified by standing or sitting, but relieved by lying

down. [R. 240].  The plaintiff complained of pain at a seven out of 10 on October 31,

2007, and Dr. Humphreys again noted that the plaintiff's pain was intensified by

movement and eased by lying down. [R. 238].  On February 19, 2008, the plaintiff rated

his pain at a six to seven out of 10 which was intensified by cold and rainy weather, and

while Lortab 10 mg controlled his pain, nothing really helps to diminish his pain. [R.

236].

      The plaintiff was ultimately referred to Tennessee Valley Pain Management

on March 10, 2009.  Stephen V. Dreskin, M.D., noted that the plaintiff reported:

> that his pain is alleviated with medications, rest, changing positions, and
> with heat.  His pain is exacerbated by prolonged sitting, prolonged standing,
> bending, increased activity, and with cold or rainy weather.  He denies any
> other associated symptoms with his pain.  He rates the average severity of
> his pain as a 6-7, on a scale of 0 to 10.  His pain rating ranges from 3-10.
> He reports a dull ache in his lower back, and at times sharp, shooting, and
> burning pain in his lower back and right lower extremity.  His pain is
> constant.

[R. 281].  Physical examination revealed tenderness in the lower back, with a decreased

range of motion, and a positive straight leg raising test. [R. 283].  Dr. Dreskin increased

the plaintiff' Lortab 10 mg dosage to three a day. [Id.].  On June 3, 2009, Dr. Dreskin

noted a "tightness and spasticity of the muscles of his lower back," in addition to a

decreased range of motion and positive straight leg raise.  [R. 272].

      Additionally, consultative examinations document the plaintiff's pain.  On July 30,

2007, the plaintiff underwent a psychological evaluation at the behest of the

Commissioner by Mary Arnold, Psy.D., a licensed psychologist.  Dr. Arnold noted that

the plaintiff's "posture, position changes and gait are consistent with that of persons with chronic pain.  He reports pain that interferes with sleep." [R. 201].  An August 3, 2007, consultative physical examination by Younus M. Ismail, M.D., noted that the plaintiff was "having a spasm of the paraspinal muscles at the lumbar spine." [R. 204].  Dr. Ismail noted the plaintiff's "straight leg raising is painful after 30 degrees bilaterally," and that "[h]e is not able to do the heel-toe walking and squatting because of back pain."  [Id.].

        In applying the Eleventh Circuit's pain standard, the ALJ found that the plaintiff has medically determinable impairments that could reasonably be expected to produce his alleged symptoms, but that his and his girlfriends's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with his residual functional capacity assessment.  [R. 17].   This conclusion is not supported by substantial evidence.  The medical evidence shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations.  See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").  As Judge Allgood observed in Lamb v. Bowen:  "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain.  No examining physician ever

questioned the existence of appellant's pain.  They simply found themselves unable to cure the pain."  847 F.2d 698 (11th Cir. 1988).

It is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence.  Therefore, the ALJ failed to satisfy the requirements of Hale.  The conclusion of that court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.  It follows, therefore, that claimant's pain testimony has been accepted as true."  Hale, at 1012.

The plaintiff testified that he can stand for 30 minutes, sit for 30 minutes, and walk about 100 feet at a slow pace.  [R. 301].  He also testified that twisting and bending hurts his back, and he is able to lift five to 10 pounds before hurting his back. [R. 302].  He takes narcotic pain medication as prescribed, but it only "curbs the pain." [Id.].  "It'll take some of the pain away, but it'll come back later on."  [Id.].  After taking his pain medication, the plaintiff will lie down two or three times a day for 30 minutes to an hour.  [R. 334].  At the hearing, the plaintiff's attorney questioned the VE:

Q:   Ms. Daniels, if a hypothetical individual of the same age, education, and work background as the Claimant had the need to take unscheduled breaks to lie down during an eight-hour working day and they [sic] expected this to happen two to three times a day and would need to rest on average 30 minutes to one hour before returning to work each time, how would that affect their [sic] ability to sustain employment?

A:   That would preclude work activity.

[R. 312].  Taking the plaintiff's testimony as true, the VE's testimony establishes disability without a doubt.

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 18 November 2010.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.